UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SURFRIDER FOUNDATION,<br><br>                              Plaintiff,<br><br>v.<br><br>INTERNATIONAL BOUNDARY AND WATER COMMISSION, UNITED STATES SECTION,<br><br>                              Defendant. | Case No.: 18cv1621 JM (JMA)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Defendant the International Boundary and Water Commission, United States Section ("USIBWC") moves the court to dismiss Plaintiff Surfrider Foundation's second cause of action on sovereign immunity grounds. (Doc. No. 13.) Plaintiff opposes. (Doc. No. 17.) Having carefully considered the matters presented, the court record, and the arguments of counsel, the court denies USIBWC's motion.

///

///

# BACKGROUND[1]

This case arises out of the management and operation of facilities in the Tijuana River Valley intended to direct and treat water flowing from Mexico across the international border into the United States. On July 17, 2018, Plaintiff filed this action alleging (1) discharge of pollutants from the USIBWC canyon collector facilities violates the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f); and (2) discharge of pollutants from the USIBWC flood conveyance structure without a National Pollutant Discharge Elimination System ("NPDES") permit violates the CWA, 33 U.S.C. § 1311(a). (Doc. No. 1, ("Compl.").)

## I. The Parties

Plaintiff Surfrider Foundation ("Surfrider") is a grassroots environmental non-profit organization with 1,680 members located in San Diego County. USIBWC is an agency and instrumentality of the United States government charged with addressing transboundary issues arising out of agreements between the United States and Mexico, including the Treaty of February 3, 1944, for the Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande ("1944 Treaty").

## II. The International Boundary and Water Commission

The International Boundary and Water Commission ("Commission") is a bi-national body comprised of the USIBWC and the Comisión Internacional de Límites y Aguas ("CILA") in Mexico. Both sections of the Commission exercise the rights and obligations of their governments under the 1944 Treaty. Under the 1944 Treaty,

> Neither Section [the USIBWC or CILA] shall assume jurisdiction or control over works located within the limits of the country of the other without the express consent of the Government of the latter. The works constructed, acquired or used in fulfillment of the provisions of this Treaty and located wholly within the territorial limits of either country, although these works may be international in character, shall remain, except as herein otherwise specifically provided, under the exclusive

---

[1] The facts in this section are drawn from the complaint and submissions from the parties, and, at this stage, are taken as true to the extent they are well pled.

jurisdiction and control of the Section of the Commission in whose country the works may be situated.

(Doc. No. 13-2 ("1944 Treaty") Art. 2.)

## III. South Bay Plant

Decisions of the Commission are recorded in Minutes. In 1990, the Commission entered into an agreement known as Minute 283 to address the border sanitation problem in San Diego, California, and Tijuana, Baja California. Among other things, Minute 283 led to the construction of the South Bay International Wastewater Treatment Plant ("South Bay Plant").

The South Bay Plant is located in the Tijuana River Valley in the City of San Diego, San Diego County, California. The South Bay Plant was designed "to capture and treat Tijuana wastewater, which would otherwise flow into the U.S. through the Tijuana River and canyons, to secondary standards for discharge into the Pacific Ocean." (Compl. ¶ 65.) It is permitted to treat up to 25 million gallons of wastewater per day. USIBWC owns the South Bay Plant. The South Bay Plant and its associated facilities are subject to the terms of NPDES permit No. CA0108929 (the "NPDES Permit"). The NPDES Permit authorizes discharges of pollutants at the South Bay Ocean Outfall only, and only after such pollutants have gone through secondary treatment at the South Bay Plant. All other discharges are prohibited.

### A. Canyon Collectors

USIBWC operates five canyon collectors: Goat Canyon, Smuggler's Gulch, Canyon Del Sol, Silva Drain, and Stewart's Drain. The canyon collectors are designed to capture and divert sewage and runoff that crosses the border into the United States from Mexico west of the flood control conveyance. The canyon collectors detain and direct wastewater into a shallow detention basin. Wastewater in the detention basin is then directed to a screened drain inlet ("collector inlet") regulated by a valve. When open, the water in the detention basin is accepted into a pipe system and conveyed to the South Bay Plant for treatment and eventual discharge at the South Bay Ocean Outfall. When closed or

3

malfunctioning, the water cannot drain into the treatment system, and instead overflows the detention basin and travels into the downstream drainages. The canyon collectors are subject to the NPDES permit.

## IV. Flood Control Conveyance

In 1978, USIBWC constructed a flood control conveyance designed to capture as much as 135,000 cubic feet of water per second from the Tijuana River as it crosses the border from Mexico into the United States. The flood control conveyance is a concrete-lined channel with banked sides that begins at the United States border with Mexico. It directs water, sewage, and other wastes into an area of the Tijuana River Valley west of the historical course of the Tijuana River, in which the Tijuana River had not previously flowed.

The flood control conveyance is not subject to the NPDES Permit. Plaintiff alleges that USIBWC routinely discharges pollutants and solid and/or hazardous waste, captured from the Mexican portion of the Tijuana River, out of the flood control conveyance.

## LEGAL STANDARDS

Federal courts are courts of limited jurisdiction. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998). As the party asserting claims, Plaintiff bears the burden of establishing jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The absence of consent deprives the court of jurisdiction to hear the case. Id. A "waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." F.A.A. v. Cooper, 566 U.S. 284, 290 (2012). "Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." Id. (internal citation omitted). Ambiguity exists "if there

4

is a plausible interpretation of the statute" that would not result in waiver of sovereign immunity. <u>Id</u>. at 290-91. This canon of construction is a tool for interpreting statutes that should be applied in addition to other traditional statutory interpretation tools. <u>Id</u>. at 291.

**DISCUSSION**

Plaintiff alleges that USIBWC discharges pollutants without an NPDES permit and in violation of the CWA when wastewater exits the flood control conveyance into the Tijuana River. USIBWC argues that this claim is barred by sovereign immunity. Application of the CWA to the flood control conveyance, USIBWC argues, will affect or impair the 1944 Treaty. USIBWC does not argue that Plaintiff's other claim—alleging that Defendants' discharges from the canyon collectors violate the NPDES permit—is barred by sovereign immunity.

### I. Scope of Waiver of Sovereign Immunity

Congress unequivocally consented to suit under the CWA. Section 505(a)(1) of the CWA allows "any citizen" to file suit against a person alleged to be in violation of an effluent standard or limitation under that chapter "including . . . the United States . . ." 33 U.S.C. § 1365(a). Plaintiff alleges that USIBWC is in violation of an effluent standard or limitation provided by the CWA. Thus, the question is the scope of this waiver.

Section 511(a) of the CWA provides that the Act—

> shall not be construed as (1) limiting the authority or functions of any officer or agency of the United States under any other law or regulation not inconsistent with this chapter; (2) affecting or impairing the authority of the Secretary of the Army (A) to maintain navigation . . ., or (3) <u>affecting or impairing the provisions of any treaty of the United States</u>.

33 U.S.C. § 1371(a) (emphasis added). This section is a general provision applicable to the entirety of the CWA. <u>See id</u>.

The court is not aware of any other case involving the interplay of § 511(a) and the sovereign immunity waiver of § 505(a)(1). A number of courts, however, have concluded that the parallel language of § 511(a)(2) provides a limitation on the sovereign immunity

5

waiver provided in § 313 of the CWA.[2] Sovereign immunity bars suits "affecting or impairing the authority of the Secretary of the Army (A) to maintain navigation . . ." See, e.g., In re Operation of Missouri River Sys. Litig., 418 F.3d 915 (8th Cir. 2005) (finding § 511(a)(2) unambiguously limits the partial sovereign immunity waiver provided by § 313); North Dakota v. U.S. Army Corps of Engineers, 270 F. Supp. 2d 1115, 1123 (D.N.D. 2003) ("While there is no question that Section 313 of the Clean Water Act [33 U.S.C. § 1323] constitutes a partial waiver of sovereign immunity, there is also no question that Section 511 [33 U.S.C. § 1371] provides sovereign immunity protection for the Corps of Engineers when compliance with the Clean Water Act may 'affect or impair' the authority of the Corps of Engineers to "'maintain navigation.'"). The same reasoning applies to § 511(a)(3) in this case.

Section 511(a)(3) unambiguously limits the partial waiver of sovereign immunity provided by § 505(a)(1). See id. Section 511 is a general provision applicable to the entirety of the CWA. It provides that the CWA shall not be construed as affecting or impairing the provisions of any treaty. This directive applies to construction of the waiver of sovereign immunity in § 505(a)(1) allowing for citizen suits. Cf. Daniel v. Nat'l Park Serv., 891 F.3d 762, 769 (9th Cir. 2018) ("We begin with the principle that our duty is to construe statutes, not isolated provisions.") (internal quotation and citation omitted). The United States consented to suit under the CWA citizen suit provision, but only to the extent that it does not affect or impair a treaty.

///

///

---

[2] Section 313 provides in relevant part: "Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants . . . shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity . . . ." 33 U.S.C. § 1323(a).

## II. Whether the 1944 Treaty Is Affected or Impaired

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. A "jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." Id. (internal quotations and citation omitted). "The question of jurisdiction and the merits of an action are intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." Id. (internal quotations and citation omitted).

The question is whether Plaintiff's claim requires USIBWC to take action "affecting or impairing" the 1944 Treaty. The CWA does not define the phrase "affecting or impairing." Black's Law Dictionary defines "affect" as "[m]ost generally, to produce an effect on; to influence in some way." Black's Law Dictionary (10th ed. 2014). Black's Law Dictionary defines "impair" as "to diminish the value of." Id. Absent application of any other canon of construction, "affect" and "impair" should be construed broadly in favor of the sovereign. See Cooper, 566 U.S. at 291.[3]

---

[3] Plaintiff cites to Save Our Sound Fisheries Ass'n v. Callaway, 387 F. Supp. 292 (D.R.I. 1974) for the proposition that the "affect or impair" language of § 511(a) should not be read broadly and only bars suit "where a treaty necessarily conflicts with the [CWA]." (Doc. No. 17 at 10.) This case held that the "requirement of obtaining a permit under 33 U.S.C. § 1344 for the discharge of dredged material into navigable waters, after notice and opportunity for public hearings, cannot be said to 'affect or impair' the authority of the Secretary of the Army to maintain navigation." Id. at 305. The court declined to read § 511(a) as a broad exemption from permitting requirements, as defendants urged. But the court did not hold that the "affect or impair" language of § 511(a) was limited to situations where the obligation would "conflict" with the ability to maintain navigation. Furthermore,

USIBWC argues that its negotiating position with Mexico under the 1944 Treaty and Minutes will be impaired or affected if the flood control conveyance is subject to the CWA. If required to operate the flood control conveyance under an NPDES permit, USIBWC argues, it will be "legally responsible for ensuring the water quality of any transboundary flows that pass through the flood control conveyance." (Doc. No. 19 at 7.) This "new, open-ended obligation," (id.), will "compel USIBWC to develop a unilateral, domestic solution to the international problem of pollution in the Tijuana River." (Doc. No. 13-1 at 8.)

USIBWC concedes that operating the canyon collectors in compliance with its current NPDES permit does not affect or impair the 1944 Treaty. This is because, USIBWC argues, the United States and Mexico already negotiated an agreement to address the problem of transboundary flows through the Tijuana tributary canyons—Minute 283.[4] USIBWC argues that Minute 283 assumes that works within the United States are subject to CWA regulation. See Conceptual Plan for the International Solution to the Border Sanitation Problem in San Diego, California/Tijuana, Baja California, Minute 283 at 4, available at https://www.ibwc.gov/Files/Minutes/Minute283.pdf, ("Because water quality standards are more strict in the United States, the construction, operation and maintenance of the land and deep ocean outfalls would be financed by the United States in recognition of the potential benefits to the Tijuana River Estuary and United States Beaches in San Diego County, California."). Unlike the canyon collectors, USIBWC argues, the Commission has not agreed on a Minute to address the border sanitation problem presented by discharges from the flood control conveyance.

---

the court was not deciding whether this provision affected the scope of a waiver of sovereign immunity, as is at issue here.

[4] As discussed above, the Commission entered into an agreement known as Minute 283 to address the border sanitation problem. Among other things, Minute 283 led to the construction of the South Bay Plant and canyon collectors.

Plaintiff argues that application of the CWA to the flood control conveyance will not affect or impair the 1944 Treaty. Plaintiff argues that the Treaty already requires the United States to comply with domestic water quality standards, including the CWA. The 1944 Treaty provides that works within the United States remain under the exclusive jurisdiction and control of USIBWC, 1944 Treaty, Art. 2, and that the United States "shall assume responsibility for and adjust exclusively in accordance with its own laws all claims arising within its territory in connection with the construction, operation, or maintenance" of the works agreed upon under the Treaty. Id. at Art. 20. Minute 261, relating to "border sanitation problems," recognizes "that each country in dealing with its sanitation problems has its own quality standards, determined by the authorities responsible for safeguarding public health and well-being of its inhabitants." Minute 261 at 1.[5]

Whether Plaintiff's claim will affect or impair the 1944 Treaty is a question of fact that cannot be answered by the pleadings or evidence before the court. It is possible that requiring USIBWC to comply with the CWA for discharges from the flood control conveyance will affect or impair the 1944 Treaty and Minutes. But the Complaint does not indicate whether compliance with the CWA will affect or impair the 1944 Treaty. Nor do the Treaty or Minutes. USIBWC mounts a "factual attack" against Plaintiff's claim. See Safe Air for Everyone, 373 F.3d at 1039. The court would need to make factual findings outside of the pleadings to reach a conclusion on this question. And USIBWC fails to present sufficient evidence to support any such finding. First, USIBWC fails to identify what compliance with the CWA would require. USIBWC itself refers to the "new, open-ended obligation" that application of the CWA would create, without defining this

---

[5] Plaintiff also argues that a NPDES permit would not affect or impair the 1944 Treaty as it would only regulate the quality of <u>domestic</u> water discharged from the flood control conveyance, not what enters the conveyance. This distinction is unpersuasive. The Complaint alleges that the flood control conveyance was designed to capture water from Mexico at the precise moment that it crosses the international border into the United States and that it was built pursuant to a bi-national agreement.

9

obligation. Even if Plaintiff succeeds on its second claim and USIBWC is required to obtain an NPDES permit, the terms of the permit are unknown. Second, the Complaint and 1944 Treaty do not indicate how USIBWC's new (undefined) obligation will affect or impair the Treaty. USIBWC presents no evidence on this issue. USIBWC concedes that operating the canyon collectors under the constraints of an NPDES permit does not affect or impair the 1944 Treaty, but argues that requiring a permit at the flood control conveyance will affect the Treaty. At oral argument, USIBWC argued that the terms of an NPDES permit regulating discharges from the flood control conveyance would impose a much broader obligation than that imposed by the NPDES permit regulating the canyon collectors. USIBWC supports its argument with hypotheticals, but no evidence.

USIBWC fails to present sufficient evidence for the court to find that compliance with the CWA would affect or impair the 1944 Treaty. USIBWC's motion to dismiss Plaintiff's second claim on sovereign immunity grounds is denied.

## CONCLUSION

For the reasons discussed above, USIBWC's motion to dismiss on sovereign immunity grounds is denied.

IT IS SO ORDERED.

DATED: December 11, 2018

JEFFREY T. MILLER
United States District Judge